UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIA R.,<br><br>   Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,<br><br>   Defendant. | Case No. 2:20-cv-11199-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

  On December 10, 2020, plaintiff Mia R. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

  Plaintiff presents one issue for decision: whether the Administrative Law Judge ("ALJ") properly considered plaintiff's testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-9; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 3-7.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated plaintiff's subjective symptom testimony. The court therefore affirms the decision of the Commissioner denying SSI.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 21 years old on the application date, completed high school and has attended some college. AR at 39, 57-58, 217. Plaintiff has no past relevant work. AR at 44, 216.

On February 8, 2018, plaintiff filed an application for SSI, alleging an onset date of February 8, 2018. AR at 57-58. Plaintiff claimed she suffered from bipolar disorder and auditory processing disorder. AR at 58. Plaintiff's application was initially denied on April 16, 2018.[1] AR at 78.

Plaintiff requested a hearing, which the assigned ALJ held on January 9, 2020. AR at 31, 84. Plaintiff, represented by counsel, appeared and testified at the hearing. AR at 35-44. The ALJ also heard testimony from Diana L. Kizer, a vocational expert. AR at 15, 44-46. The ALJ denied plaintiff's claim for benefits on February 4, 2020. AR at 15-25.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since February 8, 2018, the application date. AR at 17.

At step two, the ALJ found plaintiff suffered from the following severe impairments: history of syncope, borderline personality disorder, bipolar disorder, depression, anxiety, and mood disorder. *Id.*

---

[1] This was plaintiff's second SSI application. Plaintiff first filed an SSI application on September 23, 2015 due to bipolar disorder, which was denied March 24, 2016. AR at 48, 68.

1    At step three, the ALJ found that plaintiff's impairments, whether
2 individually or in combination, did not meet or medically equal one of the listed
3 impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR at 18.
4    The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and
5 determined she had the ability to perform:

> a full range of work at all exertional levels but with the following
> nonexertional limitations: She is to avoid unprotected heights and
> dangerous moving machinery; she is able to understand remember and
> apply simple routine instructions and concentrate and persist for
> extended periods of time in order to complete simple routine work
> tasks with routine supervision; she is able to respond appropriately to
> others in the work place, however, she would need to avoid frequent
> work related interaction with the general public; and she is able to
> adapt to a routine work setting where changes are infrequent, well
> explained and introduced gradually.

AR at 20.

At step four, the ALJ determined plaintiff had no past relevant work.  AR at 24.

The ALJ found, at step five, that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  *Id.*  The ALJ accordingly concluded plaintiff was not under a disability, as defined in the Social Security Act, at any time since February 8, 2018.  AR at 25.

---

[2]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review on October 8, 2020. AR at 1. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (cleaned up). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (cleaned up).

## IV.
## **DISCUSSION**

Plaintiff argues the ALJ failed to articulate legally sufficient reasons for discounting her subjective symptom testimony regarding her mental condition. P. Mem. at 3-9. Specifically, plaintiff argues the ALJ improperly discounted plaintiff's testimony by finding that her medical records demonstrate some level of improvement in her symptoms and in light of her activities of daily living. P. Mem. at 6.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. SSR 16-3p rescinded and superseded SSR 96-7p and applies to decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant

produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if plaintiff satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80 F.3d, 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Id.* at 1283-84.

Here, the ALJ summarized plaintiff's symptom testimony as follows. Plaintiff alleges that as of February 8, 2018, her bipolar disorder and auditory processing disorder caused her difficulty with memory, completing tasks, concentration, understanding, following instructions, getting along with others, engaging in social activities, and handling stress and changes in her routine. AR at 20; *see* AR at 35-38, 41. She testified her depression prevents her from being able to work or handle the mental demands of working. AR at 20-21; *see* AR at 35-37. The people and different surroundings at work cause her to become overwhelmed and isolate herself. AR at 21; *see* AR at 36-37.

At the first step for evaluating plaintiff's symptom testimony, the ALJ found her medically determinable impairments could reasonably be expected to cause the

symptoms alleged. AR at 21. At the second step, the ALJ partially discounted plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms as not entirely consistent with the medical evidence and other evidence in the record. *Id.* The ALJ summarized the evidence in the record that he interpreted as restricting plaintiff to a full range of work subject to certain nonexertional limitations. *Id.* Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony, as summarized above, had to be specific, clear, convincing, and supported by substantial evidence.

The ALJ here gave two primary reasons for discounting plaintiff's testimony regarding her mental condition: (1) her condition was improved and stabilized during the relevant period; and (2) her daily activities are inconsistent with her allegations. AR at 21-23.

Plaintiff first argues it was improper to discount her testimony based on evidence she experienced improvement through treatment. P. Mem. at 6. The ALJ found the record establishes "a longitudinal psychiatric treatment history for bipolar I disorder, borderline personality disorder, depression, anxiety, and a mood disorder." AR at 21 (citing AR at 695, 3023, 3040, 3063, 3545, 3896, 4277, 4328, 4450-52, 6039). Plaintiff has been medicated for her mental condition since at least 2014 (AR at 247-48), and experienced hospitalizations prior to the alleged onset date. *Id.* (citing AR at 245, 257, 869).

Despite these findings, the ALJ pointed to other evidence in the record to conclude that, with treatment, plaintiff remained stable overall. *Id.* At the time of the alleged onset date, a follow-up visit showed she was doing "better" and experienced a decrease in her depressive symptoms after changes to her medication. *Id.* (citing AR at 692, 3023, 3061). She was able to attend both her college classes and a martial arts class two times a week. *Id.* (citing AR at 692,

3023). Following that visit, she experienced increased energy and focus and continued to be active in college. AR at 21-22 (citing AR at 692). While she did have some exacerbations of depression marked by low energy and motivation, as well as disturbed sleep patterns attributed to her menstrual cycle and family conflicts (AR at 3061), she still engaged in extra-curricular activities and social events without self-injury or suicidal ideation. AR at 22 (citing AR at 3023, 3040, 3063, 3543, 3989).

After a medication change in June 2018, the ALJ noted plaintiff reported improvement in her symptoms, as evidenced by her statement that "the meds work." *Id.* (citing AR at 3543). While she subsequently experienced an increase in symptoms attributed to family conflicts and school-related stress (AR at 3989), she stabilized through the end of December 2018 after the completion of her college exams. *Id.* (citing AR at 4441). At that point she was sleeping well and occasionally using trazodone, which she reported helped "a lot." *Id.* (citing AR at 4442). Her mental status examinations improved, and reported she had "appropriate attire, grooming and hygiene with good mood and congruent affect with normal speech and motor activity." *Id.* (citing AR at 4450-51). She had "coherent, relevant and logical thought process with no perceptual disturbances, inappropriate thought content, psychosis, or suicidal ideations." *Id.* (citing AR at 4450-51). She was cognitively alert "with intact immediate, recent, and remote recall memory, normal concentration, good insight, normal judgment and impulse, and good reliability." *Id.* (citing AR at 4451).

The ALJ noted that plaintiff's treatment records from January 2019 to November 2019 document her self-reports of symptoms from stressors including family, school, finances, and friendship troubles. *Id.* (citing AR at 4605, 4670, 4824, 4900, 4928). Clinical entries document "a flat affect, depression, fair insight, moderately impaired judgment, avoidance of eye contact, and negativistic

and resistant behavior." *Id.* (citing AR at 4869). During that time period, plaintiff visited the emergency room once for suicidal ideation and self-harm, but did not require hospitalization and was released in stable condition. *Id.* (citing AR at 5264, 5746). Overall, plaintiff's mental health showed improvement – she adjusted to school and passed her classes, she balanced academic and social commitments, and she made progress in therapy. AR at 22-23 (citing AR at 4703-04, 4824-25, 4867-68, 4928, 4948). The ALJ cited plaintiff's own testimony in noting she has sufficient attention to remain in college with passing grades and is able to engage in hobbies of drawing and writing. AR at 23 (citing AR at 36, 39-40).

Plaintiff's generally improved and stable condition with medication, which the ALJ found and supported by citing the numerous locations in the record that indicate her symptoms were controlled, was a clear and convincing reason for discounting plaintiff's symptom testimony. *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (ALJ's finding that symptoms were controlled was clear and convincing reason to reject plaintiff's testimony). This is not a case of relying on a few isolated instances of improvement; rather, the ALJ considered the entire record, noting both plaintiff's improvements and setbacks. Plaintiff argues the ALJ cannot discount her testimony about being unable to work merely because she "experienced some level of improvement" (P. Mem. at 6); however, that is not what the ALJ did here. Rather, the ALJ determined that with therapy and medication, plaintiff had reached a level of overall stability that would allow her to work subject to the nonexertional limitations listed. AR at 21; *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The court will not second-guess the ALJ's determination that, taking all of the objective medical evidence into account, plaintiff's overall condition contradicted her claims of incapacity. *See Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).

Plaintiff also argues that the ALJ may not discount her testimony due to her activities of daily living, especially her school attendance. P. Mem. 7. But the ALJ may consider evidence of plaintiff's daily activities in weighing the credibility of her symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including ' . . . the claimant's daily activities") (quoting *Smolen*, F.3d at 1284). Here, the ALJ discounted plaintiff's testimony because the overall nature of plaintiff's daily activities, especially her ability to participate in and pass her college courses, suggested that contrary to her testimony, she has the capacity to engage in substantial gainful activity. AR at 21-23.

Plaintiff argues that her part-time school attendance does not contradict her testimony that she is unable to work full-time. P. Mem. at 7. But even where a plaintiff's "activities suggest some difficulty functioning, they may be grounds for discrediting [her] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). While plaintiff testified she attends school for only four to six hours a week, the vocational expert who testified at her hearing accounted for consistent missed days of work and a 30% reduction in daily productivity. AR at 38, 46. Despite plaintiff's arguments to the contrary, "the ALJ was not required to find [plaintiff's daily] activities were comparable to activities performed during full-time working" in order to discount her testimony. *Chipman v. Berryhill*, 765 Fed. Appx. 264, 265 (9th Cir. 2019). For these reasons, the ALJ did not err in finding that plaintiff's testimony was inconsistent with her activities of daily living.

Viewing the evidence as a whole, the court concludes the ALJ provided

specific, clear, and convincing reasons supported by substantial evidence in the record to discount plaintiff's testimony to the extent he did.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: September 28, 2022

SHERI PYM
United States Magistrate Judge